KENNETH NICHOLS, d/b/a K.R. Nichols and Son Trucking, Plaintiff-Appellee, v. CERTAIN UNDERWRITERS AT LLOYD'S LONDON *et al.*, Defendants-Appellants.

Fourth District   No. 4—01—0721

Argued March 27, 2002.—Opinion filed June 7, 2002.

John P. McGahey (argued), of Law Offices of John P. McGahey, of Chicago, for appellants.

Gary L. Smith (argued), of Loewenstein, Hagen & Smith, P.C., of Springfield, for appellee.

JUSTICE MYERSCOUGH delivered the opinion of the court:

Plaintiff filed a claim for loss under its cargo insurance policy after the theft of a detached trailer and its cargo from an unsecured parking lot. Plaintiff and defendants filed cross-motions for summary judgment. On March 20, 2001, the trial court entered summary judgment in favor of plaintiff. Defendants filed a motion for reconsideration, which the trial court denied on July 20, 2001. Defendants appeal, arguing the trial court erred in granting summary judgment inasmuch as the insurance policy in question clearly and unambiguously did not provide insurance for the loss. We disagree and affirm the trial court.

## I. BACKGROUND

Defendants issued plaintiff, a transportation business, a cargo insurance policy, certificate No. NA40020N, which was in effect between September 23, 1998, and September 23, 1999. The certificate of insurance identified the insured goods as "motor truck cargo."

On or about October 16, 1998, plaintiff's employee, Donald Baird, was transporting a shipment of liquid cooking oil products from Danville, Illinois, to Seaboard Tampa Terminal in Tampa, Florida. Baird was driving a tractor attached to a utility refrigeration trailer. On October 16, 1998, Baird detached the trailer and parked it on a lot at the Dixie Boy Truck Stop in San Antonio, Florida. The truck stop did not provide any fencing, guards, security, or surveillance for trailers left on the lot. On October 19, 1998, Baird returned to the parking lot and found the trailer with its cargo had been stolen. Plaintiff submitted a claim for loss to defendants in the amount of $45,104.04.

In three letters dated November 3, 1998, March 23, 1999, and July 9, 1999, defendants denied the claim based on their interpretation of the policy language. Specifically, defendants asserted that the detached trailer parked in an unsecured lot with no security was not an insured "truck" as that term is defined by the clear and unambiguous language of the policy. According to the letters, leaving the trailer and load on an unsecured lot did not comply with the terms of the policy and, therefore, no coverage existed for the loss. Moreover, the July 9, 1999, letter explained that the unattended truck endorsement affords coverage to "trucks" not in a building or fully enclosed yard as long as there is either constant surveillance or a guard. The letter stated that under the instant facts, there was no coverage as the detached trailer did not meet the definition of "truck."

According to the policy, coverage was for "all risks of physical loss or damage from an external cause to lawful cargo in and/or on a truck whilst in [the insured's] care, custody[,] or control in the ordinary course of transit, including loading and unloading." Under the policy, the term "truck" is defined as follows:

"a) The word 'truck' shall mean a truck or truck-trailer designed for travel on public roads.

'Truck' includes trailers and semi[ ]trailers, dollies or auxiliary wheels combined, or any combination of them, or any unidentified trailer, BUT ONLY

i) whilst attached to a covered truck or trailer OR

ii) whilst temporarily detached for a period not exceeding 72 consecutive hours (Sundays and holidays excluded) from a covered truck or tractor AND whilst garaged in a building or parked in a fully enclosed yard which is securely closed and locked, or under constant surveillance, or on a guarded lot AND the trailer or semi[ ]trailer has all openings closed and securely locked with keys removed."

Under the policy, the term "unattended" is defined as follows:

"c) The word 'unattended' shall mean: A truck which has been left without a responsible person whose duty is to drive, guard, or attend the truck being either on, in, or within ten yards of the truck."

Exclusion k provides as follows:

"This insurance does not insure the liability of the insured for:

\* \* \*

k) Any losses from unattended trucks while in the ordinary course of transit unless:

a) The truck is *garaged in a building or parked in a fully enclosed yard which is securely closed and locked, or under constant surveillance, or on a guarded lot AND*

b) The truck *has all openings closed and securely locked* and *keys removed*, in so far [*sic*] as local regulations permit." (Emphases added.)

The above-emphasized language in exclusion k appears verbatim in the policy definition of "truck." In addition, for simplicity, subsection (a) of exclusion k will hereinafter be referred to as the "secured lot" requirement, and subsection (b) will be referred to as the "closed and locked" requirement.

An unattended truck endorsement was added to the policy and included in the optional endorsements section of the policy and stated:

"2) UNATTENDED TRUCK ENDORSEMENT

In consideration of the additional premium charged, it is hereby noted and agreed that, irrespective of exclusion k, this policy is extended to include losses to cargo directly resulting from forcible and/or violent entry to unattended trucks, subject to such trucks having all their openings closed, securely locked[,] and all keys removed, but the limit of liability under this extension shall be $ (schedule item 2) any one truck."

Based upon the above language of the policy, defendants denied plaintiff's claim for loss because the stolen trailer did not meet the definition of "truck" and, therefore, did not fit within the coverage for loss extended in the unattended truck endorsement. Defendants argued the definition of "truck" was clear, plain, and unambiguous, and the stolen trailer was not an insured truck as defined by the policy. Defendants contended the policy at issue was designed to provide insurance to the trucking industry for cargo *in transit on trucks*, but it did not insure cargo being stored or warehoused. Therefore, defendants argued, "inasmuch as cargo is insured only on a 'truck', *** the definition of 'truck' is of paramount importance in determining the risk covered." Defendants stated the detached trailer was not an insured "truck" because it did not meet the "secured lot" requirement of the policy. Therefore, defendants found the detached trailer was not an insured truck under the policy and denied coverage.

Plaintiff argued the policy was ambiguous and the unattended truck endorsement coverage was illusory. Plaintiff reasoned that a detached trailer was covered against loss under the terms of exclusion k of the policy as long as it met the "secured lot" and "closed and locked" requirements. Plaintiff further contended that the unattended truck endorsement extended coverage of the policy to provide for coverage due to theft specifically when cargo was left unattended. According to plaintiff, the phrase "irrespective of exclusion k" in the unattended truck endorsement could only be interpreted as removing the "secured lot" requirement, thereby permitting a detached trailer to meet the definition of "truck" so long as it was "closed and locked."

The trial court entered summary judgment for the plaintiff, finding defendants' interpretation of the unattended truck endorsement would render the endorsement coverage illusory. The trial court then denied defendants' motion for reconsideration, and this appeal followed.

## II. ANALYSIS

Defendants appeal, arguing the language of the policy is clear, plain, and unambiguous. Defendants further allege the court failed to use the plain and ordinary meaning of the policy language in determining that plaintiff's detached and unattended trailer met the definition of "truck" as defined within the policy.

### A. Standard of Review

■ Granting of a motion for summary judgment is not discretionary, and the proper standard of review is *de novo*. *Town of Avon v. Geary*, 223 Ill. App. 3d 294, 298-99, 585 N.E.2d 194, 197-98 (1991). In reviewing the trial court's ruling on a motion for summary judgment,

the appellate court should consider anew the facts and law related to the case and determine whether the trial court was correct. *Shull v. Harristown Township*, 223 Ill. App. 3d 819, 824, 585 N.E.2d 1164, 1167 (1992). Moreover, the reviewing court is not limited to precise reasons stated or those implied by the trial court in entering its summary judgment in determining whether judgment was correctly entered for the moving party as a matter of law. Rather, the reviewing court will consider all grounds urged and facts revealed in the trial court when determining the propriety of summary judgment. *Kirnbauer v. Cook County Forest Preserve District*, 215 Ill. App. 3d 1013, 1016, 576 N.E.2d 168, 171 (1991).

### B. Interpretation of Policy Language

■ At issue in the instant case is whether the language of the policy was clear, plain, and unambiguous, thereby requiring strict compliance with the terms. The construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court which are appropriate subjects for disposition by way of summary judgment. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391, 620 N.E.2d 1073, 1077 (1993). To ascertain the meaning of the policy's words and the intent of the parties, the court must construe the policy as a whole, with due regard to the risk undertaken, the subject matter that is insured and the purposes of the entire contract. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 108, 607 N.E.2d 1204, 1212 (1992). If the words in the policy are susceptible to more than one reasonable interpretation, they are ambiguous and will be construed in favor of the insured and against the insurer which drafted the policy. *Outboard Marine*, 154 Ill. 2d at 108-09, 607 N.E.2d at 1212. Where a policy provision is clear and unambiguous, its language must be taken in its " 'plain, ordinary and popular sense.' " *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 74, 578 N.E.2d 926, 930 (1991), quoting *Hartford Accident & Indemnity Co. v. Case Foundation Co.*, 10 Ill. App. 3d 115, 121, 294 N.E.2d 7, 12 (1973). The court will not search for ambiguity where there is none. *Crum & Forster*, 156 Ill. 2d at 391, 620 N.E.2d at 1078.

■ At issue in the instant case is whether a detached trailer meets the policy definition of "truck" as that term applies to *both* exclusion k and the unattended truck endorsement. According to the definition, a detached trailer will only meet the definition of "truck" if the trailer (1) is detached from a covered truck or tractor for a period not exceeding 72 consecutive hours, (2) meets the "closed and locked" requirement, and (3) meets the "secured lot" requirement. There is no

dispute that the stolen trailer had been detached for a period not exceeding 72 hours or that it met the "closed and locked" requirement. There is also no dispute that the stolen trailer did not meet the "secured lot" requirement. Therefore, the detached trailer did not meet the policy definition of "truck."

Exclusion k generally states the policy does not insure liability for losses from unattended trucks in the ordinary course of transit unless the unattended truck (1) meets the "secured lot" requirement, *and* (2) meets the "closed and locked" requirement. Applying the facts of the instant case to the terms of exclusion k, the detached trailer did not fit within the exemption from exclusion k for the same reason it did not meet the definition of "truck," *i.e.*, because it did not meet the "secured lot" requirement. Therefore, there was no coverage for plaintiff's loss under exclusion k.

Plaintiff asserts, however, that coverage for his loss exists under the unattended truck endorsement. This endorsement extended coverage to losses sustained to cargo on unattended trucks resulting from forcible and/or violent entry to same, subject only to the truck meeting the "closed and locked" requirement. Central to the determination of whether the endorsement provided coverage to plaintiff's loss is the application of the language, "irrespective of exclusion k," included therein.

Cargo left in unsecured areas presents risks not present when the cargo is left in a secured area. However, the business of insurance is one of insuring against risks in exchange for a premium. The unattended truck endorsement in this policy extends coverage in exchange for an additional premium. Under that endorsement, unattended trucks are covered so long as the "closed and locked" requirement is met. The unattended truck endorsement serves to eliminate the "secured lot" requirement.

Defendants argue at length that the language of the unattended truck endorsement, "irrespective of exclusion k, this policy is extended to include ***," operated to modify only exclusion k and not the definition of "truck" found elsewhere in the policy. "Irrespective of" does not mean "with regard to." "Irrespective of" means "without..regard to" (Webster's Third New International Dictionary 1196 (1981)) or without taking into account" (definition of "regardless of" (Webster's Third New International Dictionary 1911 (1981))). The language focused on by defendants could be read to say, "Without any particular thought being given to exclusion k, this policy is extended to include ***." The more important language is the language stating what is being done: "this policy is extended ***." The language does not say that it applies only to exclusion k; it says that it applies to the

entire policy, and the entire policy is extended. Therefore, the language in the endorsement, "irrespective of exclusion k," did remove certain components from the definition of "truck" as asserted by plaintiff.

Defendants concede that unattended trucks, even unattended trucks which are parked on unsecured lots, are covered by the policy by virtue of the endorsement. Defendants argue, however, that a trailer or semitrailer not attached to a tractor is not a "truck." Under the definition of "truck," detached trailers or semitrailers are only "trucks" if there has been compliance with the "secured lot" requirement and with the "closed and locked" requirement. The "closed and locked" requirement was met here. Defendants' argument is accordingly that the endorsement eliminating the "secured lot" requirement does not apply here because plaintiff did not comply with the "secured lot" requirement.

Defendants argue that unattended semitrailers present more of a risk than unattended tractor-trailers and, accordingly, there was no intent for the unattended truck endorsement to apply to detached semitrailers. The policy, however, does not say that. The policy says that detached trailers are "trucks" covered by the policy if the "secured lot" and "closed and locked" requirements are satisfied. The unattended truck endorsement then overrides the "secured lot" requirement in exchange for the payment of an additional premium. Perhaps there is some merit to defendants' argument that the endorsement waived the "secured lot" requirement only for purposes of exclusion k and not for the purpose of the definition of "truck." However, we find that argument—that language in one portion of the policy is waived, but identical language in another portion of the policy is not waived—unconvincing.

Defendants have drafted a policy where an ambiguity may result from the use of identical language in both the definitions and exclusion k of the policy. The potential for ambiguity is realized when the policy strikes language critical to the correct interpretation of the policy, but strikes it only from exclusion k. The rule is that ambiguities in a policy, particularly in exclusions, will be interpreted against the insurer. *American States Insurance Co. v. Koloms*, 177 Ill. 2d 473, 479, 687 N.E.2d 72, 75 (1997). Defendants' interpretation allows an insured to purchase the unattended truck endorsement, thinking that it is thereby allowed to park on unsecured lots, and to discover only when a claim is made that detached trailers, where cargo is routinely carried, are not covered.

Part of the problem here is that defendants have chosen to insert an exclusion in their policy in the form of a definition, the definition of the word "truck," a practice almost certain to create confusion.

Certainly if there were two "secured lot" exclusions in this policy, exclusion k for tractor-trailers and another exclusion for detached semitrailers, the unattended truck endorsement (which is not by its terms limited to exclusion k) would eliminate both exclusions. Specific language would be necessary if the endorsement were to apply only to one of the exclusions. The confusion present in this case is possible only because of defendants' choice in placing what is essentially an exclusion in the definition of "truck."

Accordingly, construing the policy as a whole and with due regard to the risk undertaken, it was not error for the trial court to grant summary judgment in favor of plaintiff.

### III. CONCLUSION

For the reasons set forth above, we affirm the trial court.

Affirmed.

COOK and TURNER, JJ., concur.